

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

ANTHONY RAY WILLIS,                    §
                                       §
                Petitioner,            §
                                       §
v.                                     §        No. 4:14-CV-239-A
                                       §
WILLIAM STEPHENS, Director,            §
Texas Department of Criminal           §
Justice, Correctional                  §
Institutions Division,                 §
                                       §
                Respondent.            §

## MEMORANDUM OPINION
### and
### ORDER

This is a petition for writ of habeas corpus pursuant to 28

U.S.C. § 2254 filed by petitioner, Anthony Ray Willis, a state

prisoner incarcerated in the Correctional Institutions Division

of the Texas Department of Criminal Justice (TDCJ) against

William Stephens, Director of TDCJ, respondent.  After having

considered the pleadings, state court records, and relief sought

by petitioner, the court has concluded that the petition should

be denied.

### I.   Factual and Procedural History

On December 2, 2009, in the Criminal District Court Number

Two of Tarrant County, Texas, Case No. 1152333D, a jury found

petitioner guilty of aggravated robbery with a deadly weapon, a

crowbar or tire tool, petitioner pleaded true to the habitual-

offender notice in the indictment, and the trial court assessed

his punishment at twenty-five years' confinement.  Adm. R.,

Clerk's R. 2, 62, ECF No. 10-3.  Petitioner's judgment of

conviction was affirmed on appeal, and the Texas Court of

Criminal Appeals refused his petition for discretionary review.

Id., Cover Sheet, ECF No. 9-1 & Op., ECF No. 9-3.  Petitioner

also sought postconviction state habeas relief, but his state

habeas application was denied by the Texas Court of Criminal

Appeals without written order on the findings of the trial court.

Id., Writ cover, ECF No. 10-5.  The state appellate court

summarized the factual and procedural history of the case as

follows:

> On March 30, 2009, Irma Martinez Eggers had
> completed work at the south campus of Tarrant County
> College.  Eggers resided in Bedford but decided to
> spend the night at the Comfort Inn close to Tarrant
> County College because she had to drive early the next
> morning to Austin.  The Comfort Inn shared a parking
> lot with a Denny's restaurant.  After parking her car
> in the shared parking lot, Eggers went to Denny's to
> eat dinner.  Upon completing her meal, Eggers returned
> to the car to gather her belongings and go to her room.
>
> As Eggers began to retrieve her property from the
> trunk of her car, she noticed appellant pull the hood
> of his sweat shirt up onto his head and start toward
> her.  As Eggers shut the trunk and looked up, appellant
> was standing close to her at the rear of the vehicle.
> Appellant told Eggers that he was hungry and asked for

2

money.  When Eggers replied that she did not have any
cash, appellant stated, "See, I don't have a gun. Do
you have a gun? Don't shoot me."  While making this
statement, appellant opened his jacket up took a tire
iron out from beneath it, and said, "I have a tire
iron.  I don't want to hurt you."  Eggers then reached
into her purse and gave appellant $5.00.

Eggers then attempted to go toward the hotel but
appellant stepped in front of her and began quizzing
her about her personal life.  Eggers continued to
attempt to get to the front door of the hotel, and, as
she reached the door and attempted to open it,
appellant put his hand out and closed the door.
Appellant then reached for Eggers and, after a pause,
took her hand and shook it and walked away.  Eggers
went inside and had the clerk call 911 to report the
incident.

The police arrived and got a description of
appellant.  The officer taking the report called out
the description for other officers in the area to be on
the lookout for appellant.  A short time later,
appellant was located in front of a grocery store about
200 yards from the hotel.  After being notified that
appellant had been detained, Eggers was transported to
the scene of the detention where she identified
appellant as the perpetrator of the robbery.

Appellant was subsequently indicted for aggravated
robbery.  The indictment filed against appellant
alleges that appellant, during the course of committing
theft of property, threatened or placed Eggers in fear
of imminent bodily injury or death and that appellant
used or exhibited a deadly weapon, to-wit: a crowbar or
tire tool, that in the manner of its use or intended
use was capable of causing death or serious bodily
injury.  During the State's voir dire on the applicable
law, the State discussed the indictment and the
requirement for the use of a deadly weapon.  During
this discussion, the State's attorney advised the jury
that the law stated a deadly weapon is either a *per se*
deadly weapon, like a gun or a firearm, or anything

3

that in the manner of its use or intended use is
capable of causing serious bodily injury or death.

At the conclusion of the trial, the trial court
prepared its charge to the jury.  For purposes of this
opinion, there are two portions of the court's charge
that are of concern.  The first paragraph of concern is
the definition of deadly weapon contained in paragraph
2 of the court's charge.  The trial court defined a
deadly weapon as

> a firearm or anything manifestly designed,
> made, or adapted for the purpose of
> inflicting death or serious bodily injury; or
> anything that in the manner of its use is
> capable of causing death or serious bodily
> injury.

The next portion of the court's charge that we are
concerned with is the application paragraph, paragraph
5.   In this paragraph, the court continued to define a
deadly weapon as threaten or place [Eggers] in fear of
imminent bodily injury or death, and the [appellant]
used or exhibited a deadly weapon, to-wit: a crowbar or
tire tool, that in the manner of its use was capable of
causing death or serious bodily injury. . . .

There were no objections by the State or appellant
as to these portions of the court's charge.  After
argument, the jury began deliberations.  Thereafter,
the jury sent out the first of two notes to the judge.
The first note to the trial court requested, "Can you
please define manner of its use in relation to the tire
tool in Section 5?"  The trial court declined to answer
the question and simply referred the jury to the
existing charge.  Before the answer of the trial court
was given to the jury, the State requested that the
trial court issue an amended paragraph 5 to read "to-
wit, crowbar or tire tool that in the manner of its use
or its intended use" so that the paragraph tracked the
language of the indictment regarding the tire tool.  At
that time, the trial court refused to make this
revision.

4

Subsequently, the jury sent out a second note that stated, "We can't come to a unanimous decision, what do we do?"  In response to this note, the trial court revisited the subject matter of jury note 1 and determined that the court's charge in paragraph 5, the charging paragraph, was in error because it failed to contain the phrase "or intended use" while describing the deadly weapon.  Further, the trial court determined that the definition of a "deadly weapon" in paragraph 2 of the court's charge would also have to be amended to include "or intended use."  The jury was brought back into the courtroom, and the trial court read the new paragraphs 2, "deadly weapon," and 5, "application paragraph," to include the phrase "or intended use."  The jury returned to deliberations and convicted appellant of aggravated robbery.

*Id.*, Op. 2-5, ECF No. 9-3.

## II.   Issues

Petitioner raises nine grounds for habeas relief, wherein he claims that he received ineffective assistance of trial and appellate counsel (grounds one through seven), that a tire tool is not a deadly weapon (ground eight), and that the trial court charged the jury with an erroneous jury instruction (ground nine).  Pet. 6-7 & Insert, ECF No. 2.

## III.   Rule 5 Statement

Respondent does not assert that the petition is barred by the statute of limitations, failure to exhaust, or successiveness.  Resp't's Answer 7, ECF No. 15.

## IV.   Discussion

### *Legal Standard for Granting Habeas Corpus Relief*

Under 28 U.S.C. § 2254(d), a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a state court shall not be granted with respect to any claim that was adjudicated on the merits in state court proceedings unless he shows that the prior adjudication:  (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court.  28 U.S.C. § 2254(d).  A decision is contrary to clearly established federal law if the state court arrives at a conclusion opposite to that reached by the United States Supreme Court on a question of law or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000).  A state court decision will be an unreasonable application of clearly established federal law if it correctly identifies the applicable rule but applies it unreasonably to the facts of the case.  *Id.* at 407-08.

The statute further requires that federal courts give great

6

deference to a state court's factual findings.  Section

2254(e)(1) provides that a determination of a factual issue made

by a state court shall be presumed to be correct.  The petitioner

has the burden of rebutting the presumption of correctness by

clear and convincing evidence.  28 U.S.C. § 2254(e)(1).  When the

Texas Court of Criminal Appeals denies a federal claim in a state

habeas corpus application without written order, "it may be

presumed that the state court adjudicated the claim on the merits

in the absence of any indication or state-law procedural

principles to the contrary."  *Johnson v. Williams,* 133 S. Ct.

1088, 1094 (2013) (quoting *Harrington v. Richter,* 562 U.S. 86,

98-99 (2011)).  With these principles in mind, the court

addresses petitioner's claims.

### *Ineffective Assistance of Counsel*

A criminal defendant has a constitutional right to the

effective assistance of counsel at trial and on a first appeal as

of right.  U.S. CONST. amend. VI, XIV; *Evitts v. Lucey*, 469 U.S.

387, 393-95 (1985); *Strickland v. Washington*, 466 U.S. 668, 688

(1984); *Anders v. California*, 386 U.S. 738, 744 (1967).  An

ineffective assistance claim is governed by the clearly

established federal law in *Strickland v. Washington*.  466 U.S. at

668.  To establish ineffective assistance of counsel a petitioner

7

must show (1) that counsel's performance fell below an objective standard of reasonableness, and (2) that but for counsel's deficient performance the result of the proceeding would have been different. *Id.* at 688.

In applying this standard, a court must indulge a strong presumption that counsel's conduct fell within the wide range of reasonable professional assistance or sound trial strategy. *Id.* at 668, 688-89. Judicial scrutiny of counsel's performance must be highly deferential and every effort must be made to eliminate the distorting effects of hindsight. *Id.* at 689. Where a petitioner's ineffective assistance claims have been reviewed on their merits and denied by the state courts, federal habeas relief will be granted only if the state courts' decision was contrary to or involved an unreasonable application of the *Strickland* standard in light of the state court record. *Harrington,* 131 S. Ct. at 785 (quoting *Williams v. Taylor,* 529 U.S. at 410); *Bell v. Cone*, 535 U.S. 685, 698-99 (2002). Thus, a federal court's review of state-court decisions regarding ineffective assistance of counsel must be "doubly deferential" so as to afford "both the state court and the defense attorney the benefit of the doubt." *Burt v. Titlow,* 134 S. Ct. 10, 13 (2013) (quoting *Cullen v. Pinholster,* 563 U.S. 170, 190 (2011)).

Under his first ground, petitioner claims he was denied the effective assistance of trial counsel by the trial court's "late supplementation" of the jury instructions. Pet. 6, ECF No. 2. Under his second, third and fourth grounds, petitioner claims trial counsel was ineffective by allowing, without objection, the trial court to charge the jury with an incorrect instruction, failing to adequately cross-examine Eggers, and failing to properly investigate his case. *Id*. at 6-7 & Insert. Finally, under his fifth ground, petitioner claims trial counsel had a conflict of interest. *Id*., Insert.

In an affidavit filed in the state habeas proceeding, trial counsel responded to the allegations as follows:

> Ground One-Ineffective assistance
>
> Applicant claims in this Ground that the Court denied Applicant effective assistance so I will not address this Ground with the exception to say I cannot recall if I objected to the supplement or not.
>
> Ground Two-Ineffective assistance
>
> I cannot recall if I objected to the supplement or not. The charge given by the Court initially, that Applicant "used the weapon" inured to Applicant's benefit, since the facts were that Applicant never brandished the weapon.
>
> Ground Three-Ineffective assistance
>
> I was well prepared for trial. Applicant (I think) is referring to the fact that there was one

9

small discrepancy between her testimony at trial and what she initially told the police-that was whether she had placed her laptop computer in her trunk, as initially reported, or was she still carrying it when confronted by Applicant.  I did not pursue this small inconsistency as a trial tactic.  This witness had a Ph.d in communication.  She was <u>very</u> good at testifying, and was doing a very effective job of conveying to the jury the fear she experienced when confronted by Applicant.  I felt that every second she was on the witness stand was damaging to my client so I chose not to pursue a minor inconsistency in her statements.

Ground Four-Ineffective assistance

I did investigate the case.  My investigator spoke to the hotel clerk, who recalled seeing Ms. Eggers come into the lobby, and call 911.  I did have a copy of the 911 call as well as video of the Applicant's initial detention and subsequent arrest.  I spoke to Applicant's sister and niece, and called them at guilt innocence to testify as to other reasons that Applicant might be carrying a tire iron. I did not talk to complaining witness because she refused to return my calls, and would not speak to my investigator either. Applicant coud [sic] not provide me with any other possible witnesses.

Ground Five Ineffective assistance

I did not have a conflict with Applicant.  I did not tell him I didn't believe him.  I told him that approaching someone in the dark, asking for money, and opening your shirt to display a tire tool at least established the elements of the State's case, and that he would have a lot of explaining to do.  I also informed him that because he was a habitual offender, it would not be very likely that he could take the stand and provide any alternative versions of what transpired, and he might think about taking a plea.  He got very angry about this and filed a grievance.  I was not mad at Applicant, and did my best for him at trial.

Admin. R., WR-79,742-01 writ 49-51, ECF No. 10-5.

Based on counsel's affidavit, the documentary record, and his own recollection of the trial proceedings, the state habeas judge found that counsel fully and adequately prepared for petitioner's case; that counsel reasonably investigated petitioner's case; that counsel's decision not to cross-examine Eggers on a minor inconsistency was a matter of reasonable professional judgment; that counsel made the proper and necessary objections during the trial proceedings; that counsel's decision not to object to the trial court's original deadly weapon instruction was a matter of reasonable professional judgment; that counsel's advice that petitioner's conduct established the element of the offense, that petitioner's status as a habitual offender would make it unlikely for him to testify, and that petitioner might want to consider a plea bargain agreement was part of counsel's obligation as defense counsel to fully advise petitioner; and that counsel provided petitioner with adequate representation. *Id.* at 76-77. The court also found that the following evidence undercut any likelihood that the outcome of petitioner's trial would have been different with other counsel or if counsel had represented petitioner in another manner:

a.   In March 2009, Irma Eggers decided to spend the

11

night at a Comfort Inn across the street from the
Tarrant County College south campus because she
had to drive to Austin the following morning for a
speaking engagement.

b.   Ms. Eggers parked her car in the hotel parking lot
and walked over to a Denny's restaurant next door
for dinner.

c.   After dinner, Ms. Eggers returned to her car in
order to get something out of the trunk.

d.   Ms. Eggers noticed Applicant near the back side of
the Comfort Inn.

e.   Ms. Eggers became nervous when she saw him pull
his jersey hood over his head, and quickly shut
the trunk.

f.   The applicant approached Ms. Eggers and asked for
money.

g.   Ms. Eggers replied that she had used all of her
cash at Denny's and did not have any money.

h.   The applicant took out a tire iron from under his
jacket and said, "I have a tire iron.   I don't
want to hurt you."

I.   Ms. Eggers reached into her purse and gave the
applicant $5.

j.   When Ms. Eggers attempted to walk towards the
hotel, the applicant stepped in front of her and
blocked her way.

k.   Ms. Eggers spoke nicely with the applicant so that
she could make it to the well-lit area in the
front of the hotel.

l.   When Ms. Eggers finally reached the front door of
the hotel and tried to open it, the applicant
closed it which prevented her from going in.

m.   The applicant questioned Ms. Eggers several times
     about whether she had a laptop computer and began
     reaching to see if she had a laptop computer.

n.   The applicant eventually walked away around the
     side of the building.

o.   Once inside the hotel, Ms. Eggers told the hotel
     clerk about her interaction with the applicant and
     contacted the police.

p.   The applicant's conduct placed Ms. Eggers in fear
     that she would be killed.

*Id.* at 77-78 (record citations omitted).

Applying the *Strickland* standard to its factual findings, the state court concluded that petitioner received effective assistance of trial counsel and that counsel did not have a conflict of interest in representing petitioner.  *Id.* at 79-81.

Deferring to the state court's findings, and having independently reviewed Petitioner's claims in conjunction with the record, the state court's application of *Strickland* was not unreasonable.  Petitioner's claims are conclusory, with no legal and/or evidentiary basis, refuted by the record, involve matters of state law, or involve strategic and tactical decisions made by counsel, all of which generally do not entitle a state Petitioner to federal habeas relief.  *See, e.g., Strickland,* 460 U.S. at 689 (holding strategic decisions by counsel are virtually unchallengeable and generally do not provide a basis for post-

13

conviction relief on the grounds of ineffective assistance of
counsel); *Johnson v. Cockrell*, 306 F.3d 249, 255 (5th Cir. 2002)
(concluding that counsel is not required to make futile motions
or objections); *Green v. Johnson*, 160 F.3d 1029, 1042 (5th Cir.
1998) (providing "[m]ere conclusory allegations in support of a
claim of ineffective assistance of counsel are insufficient to
raise a constitutional issue"); *United States v. Green,* 882 F.2d
999, 1003 (5th Cir. 1989) (providing "[a] defendant who alleges a
failure to investigate on the part of his counsel must allege
with specificity what the investigation would have revealed and
how it would have altered the outcome of the trial"); *United
States v. Nersesian,* 824 F.2d 1294, 1321 (2d Cir. 1987)
(providing decisions as to nature and extent of cross-examination
are strategic).  Moreover, even if petitioner could demonstrate
defective assistance based on one or more of his claims, assuming
the jury believed the testimony of Eggers he cannot make a
showing of *Strickland* prejudice.  *Strickland,* 466 U.S. at 694-96.

     Under his sixth and seventh grounds, petitioner claims
appellate counsel was ineffective by failing to consult with him
on important issues to be raised in appellant's brief, to
thoroughly research case law, and to provide him with a copy of
his state court records.  Pet., Insert, ECF No. 2.  In his

affidavit filed in the state habeas proceeding, appellate counsel

responded to the allegations as follows:

> With one exception – the statement that I did not
> raise the issue of ineffective assistance of counsel on
> Applicant's trial counsel – Applicant makes only the
> general, unspecific and unsupported allegations that I
> failed to raise any appealable issue, or that I did not
> fully research the applicable caselaw.

> To the contrary, after reading the trial record in
> this case, I was convinced that the Applicant should
> not have been convicted on the evidence presented at
> trial, and read and re-read the record several times
> for issues to raise on appeal; throughly [sic]
> researched the issues that I thought were appealable,
> and used my best efforts in writing the brief to
> convince the Court of Appeals that the Applicant's
> conviction should be overturned.

> With regard to raising the issue of ineffective
> assistance of counsel at trial, I did not feel that the
> trial record supported the contention, and, even if
> such were evident in a trial record, such allegations
> are almost impossible to raise on a direct appeal, and
> are better raised by a writ of habeas corpus.

> Except in rare circumstances where I feel that it
> is absolutely necessary to the appeal, it is not my
> practice to furnish appointed clients with a copy of
> the record on appeal; as an appointed attorney, I do
> not get a copy of the record for myself, but rather
> have to check the record out from the District Clerk's
> office, which I must return after writing the
> Appellant's Brief.  It is my understanding that to copy
> the statement of facts without the court reporter's
> permission is against the policy regarding appointed
> appeals in Tarrant County.  Once again, the Applicant
> does not make any specific allegation as to how he was
> supposedly harmed.

> In summary, I do not feel that my representation

15

of the Applicant on direct appeal was deficient, and
believe that the Applicant received effective
representation.

Adm. R., WR-79,742-01, 61-62, ECF No. 10-5.

Based on counsel's affidavit and the documentary record, the
state habeas court found that appellate counsel exercised
reasonable professional judgment in raising the issues in
appellant's brief; exercised reasonable professional judgment in
not raising an ineffective assistance claim as the more
appropriate vehicle for raising such claims is a state habeas
proceeding under state law; exercised reasonable professional
judgment in not providing petitioner with a photocopy of the
trial record; fully and adequately prepared for the appeal; and
functioned as counsel guaranteed by the Sixth Amendment. *Id*. at
82-83. *Rylander v. State,* 101 S.W.3d 107, 110 (Tex. Crim. App.
2003). Based on its findings, the court concluded that counsel
exercised reasonable professional judgment in determining which
issues to raise on appeal and which issues to reject and provided
effective assistance on appeal. The court further concluded that
there is no reasonable probability that the outcome of
petitioner's appeal would have been different had counsel or
another counsel handled the appeal differently. *Id*. at 85.

Deferring to the state court's findings, and having

16

independently reviewed petitioner's claims in conjunction with

the record, the state court's application of *Strickland* was not

unreasonable.  As noted by the state court, appellate counsel is

not required to raise every conceivable argument urged by his

client on appeal, regardless of merit.  *Smith v. Robbins,* 528

U.S. 259, 287-88 (2000).  It is counsel's duty to choose among

potential issues, according to his or her judgment as to their

merits and the tactical approach taken.  *Jones v. Barnes,* 463

U.S. 745, 749 (1983).  Petitioner fails to raise any meritorious

claims in this petition.  Prejudice does not result from

appellate counsel's failure to assert meritless claims or

arguments.  *See United States v. Wilkes,* 20 F.3d 651, 653 (5th

Cir. 1994).  Thus, it follows that counsel was not ineffective

for failing to raise one or more of Petitioner's claims on

appeal.

### *Deadly Weapon Finding*

Under his eighth ground, petitioner claims−

a tire tool is not a deadly weapon (per se) nor is it
anything manifestly designed, made or adapted for the
purpose of inflicting death or serious bodily injury.
Furthermore there was no evidence that supported actual
use, which the original instruction stated or intended
use, which the amended instruction stated.  Mrs. Eggers
stated that the applicant never used [the] tire tool in
threating [sic] manner.

17

Pet., Insert, ECF No. 2.

Federal courts have extremely limited habeas review of claims based on the sufficiency of the evidence, and the standard for reviewing such claims is supplied by *Jackson v. Virginia,* 443 U.S. 307 (1979). In *Jackson,* the Supreme Court held that the correct standard of review when a state prisoner challenges the sufficiency of the evidence in a federal habeas-corpus proceeding is "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id*. at 319. To determine whether the evidence is sufficient to support a state criminal conviction, a federal habeas court looks to state law for the substantive elements of the relevant criminal offense. *Id*. at 324 n.16; *Dupuy v. Cain,* 201 F.3d 582, 589 (5th Cir. 2000).

Additionally, under *Jackson*, the assessment of the credibility of witnesses is generally beyond the scope of review. *Schlup v. Delo*, 513 U.S. 298, 330 (1995). Determining the weight and credibility of the evidence is within the sole province of the jury. *United States v. Martinez*, 975 F.2d 159, 161 (5th Cir. 1992). Courts view any required credibility determinations in the light most favorable to the guilty verdict. *United States v.*

*Wise*, 221 F.3d 140, 154 (5th Cir. 2000).  They do not second-guess the weight or credibility given the evidence.  *United States v. Ramos-Garcia*, 184 F.3d 463, 465 (5th Cir. 1999).  Finally, where a state-appellate court has conducted a thoughtful review of the evidence, its determination is entitled to great deference.  *Callins v. Collins*, 998 F.2d 269, 276 (5th Cir. 1993).

Applying the *Jackson* legal sufficiency and state-created factual sufficiency standards,[1] and other relevant state statutory and case law, the state appellate court considered a sufficiency-of-the-evidence issue as follows:

Legal Sufficiency of the Evidence

Standard of Review

In assessing the legal sufficiency of the evidence, we review all the evidence in the light most favorable to the verdict to determine whether any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt.  In conducting a legal sufficiency review, an appellate court may not sit as a thirteenth juror, but rather must uphold the jury's verdict unless it is irrational or unsupported by more than a mere modicum of evidence. We measure the legal sufficiency of the evidence against a hypothetically correct jury charge.

---

[1] The Texas Court of Criminal Appeals has since overruled the factual sufficiency standard and held that the legal sufficiency standard in *Jackson* is the only applicable standard in determining whether the evidence is sufficient to uphold each element of the offense. *Brooks v. State*, 323 S.W.3d 893, 895 (Tex. Crim. App. 2010).

## Analysis

Under a hypothetically correct jury charge, the State had to prove that: 1) on or about March 30, 2009; 2) appellant; 3) intentionally or knowingly; 4) while in the course of committing theft; 5) with intent to obtain and maintain control over said property; 6) threatened or placed Eggers in fear of imminent bodily injury or death, 7) that appellant used or exhibited a deadly weapon, to-wit: a crowbar or tire tool; 8) that in the manner of its use or intended use was capable of causing serious bodily injury or death.

In the case before the Court, it is undisputed that appellant approached Eggers in a parking lot after dark.  The record reflects that Eggers saw appellant coming toward her and was frightened.  Further, appellant requested money from Eggers, and, when he was advised that she had no cash, he began asking her if she had a gun.  Appellant followed that statement up with a declaration that he did not have a gun but opened up his jacket and pulled out a tire iron stating that "I have a tire iron."  Eggers testified that appellant then stated, "I don't want to hurt you." This statement resulted in Eggers reaching in her purse and giving appellant $5.00.

When we apply the test for legal sufficiency of the evidence to the hypothetically correct charge and these facts, we are of the opinion that the jury was acting rationally when it found appellant guilty beyond a reasonable doubt.

### Factual Sufficiency of the Evidence

## Standard of Review

When an appellant challenges the factual sufficiency of the evidence supporting his conviction, the reviewing court must determine whether, considering all the evidence in a neutral light, the jury was rationally justified in finding the appellant guilty beyond a reasonable doubt.  In performing a factual

sufficiency review, we must give deference to the fact
finder's determinations if supported by evidence and
may not order a new trial simply because we may
disagree with the verdict. As an appellate court, we
are not justified in ordering a new trial unless there
is some objective basis in the record demonstrating
that the great weight and preponderance of the evidence
contradicts the jury's verdict. Additionally, an
appellate opinion addressing factual sufficiency must
include a discussion of the most important evidence
that appellant claims undermines the jury's verdict.
However, when a defendant's version of the facts
conflicts with other evidence, it is the jury's
prerogative to judge the credibility of the evidence
and to ascribe the weight to be given to the evidence.

Appellant's contention is that the evidence that
the jury heard was consistent with the appellant simply
approaching Eggers as a panhandler looking for some
money. Additionally, appellant contends that, through
the testimony of his sister, he provided a logical
alternate explanation for his possession of the tire
tool. The sister testified that she had purchased a
car that developed brake issues. Appellant was to help
her by repairing the brakes, but the car did not have a
jack nor a tire tool to use on a jack. Appellant
offered to get a tire tool if his sister could find a
jack. According to the sister, this all occurred in
late March 2009. Further, appellant contends that
there was factually insufficient evidence to prove that
appellant ever used a deadly weapon. These are the
contentions and evidence that appellant contends should
undermine our confidence in the verdict of the jury.

Initially, we observe that, if the jury believed
Eggers's testimony, there was sufficient evidence to
prove that she was in fear of imminent bodily injury or
death. Further, the evidence was not contradicted that
appellant reached inside his jacket and came out with a
tire tool within seconds after asking Eggers for money.
Appellant contends that this action was simply an
attempt to show Eggers that he did not have a gun.
However, appellant followed that action with a

21

statement.  He either told Eggers "Ma'am, I don't want
to have to hurt you" or, "Now, I don't want to hurt
you."  The jury found by its verdict that appellant
threatened Eggers after asking for money.  Such a
finding is consistent with the theory of aggravated
robbery that the State put forth.

While conducting a factual sufficiency review, we
must give deference to the fact finder's determinations
if supported by evidence and may not order a new trial
simply because we may disagree with the verdict.  It is
the jury's prerogative to judge the credibility of the
evidence and to ascribe the weight to be given to the
evidence.  Therefore, we cannot say that the verdict
reached by the jury was not rationally justified.
Accordingly, the evidence was factually sufficient.

Adm. R., Op. 6-9, ECF No. 9-3 (citations omitted).

The state habeas court also entered findings that Eggers

testified that petitioner took the tire iron and threatened her

by saying that he did not want to hurt her; that petitioner

placed Eggers in fear that she would be killed; and that Eggers's

testimony provides some evidence to support the jury's finding

that petitioner used a deadly weapon in committing the offense.

Adm. R., WR-79,742-01 Writ 86, ECF No. 10-5.  Moreover, the

record reveals that a police officer testified at trial that a

tire tool can be used as a deadly weapon.  *Id.*, Reporter's R.,

vol. 3, 112-13, ECF No. 10-4.

Given this evidence, the state court's application of

*Jackson* was reasonable.  Clearly, a crowbar/tire iron when used

to strike another person can constitute a deadly weapon likely to
produce death or serious bodily injury, and the evidence was
sufficient for the jury to determine that petitioner used or
intended to use the crowbar/tire tool in a way that met the
criteria of a deadly weapon–i.e., to threaten Eggers with serious
bodily harm or death when she did not acquiesce to his request
for money.

### *Erroneous Jury Instruction*

Finally, petitioner claims the trial court's erroneous jury
instructions denied him a fair trial. Pet., Insert, ECF No. 2.
Relying solely on state law, the state appellate court overruled
this issue as follows:

> Appellant's third issue is that the trial court
> committed reversible error when the court gave the jury
> a supplemental charge regarding a deadly weapon by
> adding the words "or intended use." Appellant posits
> that article 36.16 of the Texas Criminal Code of
> Procedure mandates that the trial court erred by giving
> the additional instructions and charge. The applicable
> portion of article 36.16 provides as follows:
>
> > After the argument begins no further charge
> > shall be given to the jury unless required by
> > the improper argument of counsel or the
> > request of the jury, or unless the judge
> > shall, in his discretion, permit the
> > introduction of other testimony, and in the
> > event of such further charge, the defendant,
> > or his counsel shall have the right to
> > present objections.

*Id.* According to appellant's theory, none of the
exceptions outlined in the article apply. Therefore,
appellant contends the trial court committed reversible
error by giving the supplemental charge.

Under the article, a trial court is authorized to
give a supplemental charge if 1) there is improper
argument, 2) the jury requests such supplemental
charge, or 3) if additional testimony is allowed.
Additionally, the Texas Court of Criminal Appeals has
consistently held that a trial court may withdraw and
correct its charge if convinced an erroneous charge has
been given.

A review of the jury's note 1 reveals that the
jury was asking for additional instruction. In jury
note 1, the jury asked, "Can you please define manner
of its use in relation to the tire tool in Section 5?"
When the jury sent the note out neither the definition
of deadly weapon nor the application paragraph
contained the phrase "or intended use" when describing
the tire tool as a deadly weapon or defining deadly
weapon. [W]e view the first jury note as a request for
additional instruction. Additionally, we believe the
State was correct when it requested the additional
charge because the charge as submitted was erroneous.
The Penal Code definition of a deadly weapon includes
the omitted phrase. As submitted, the charge did not
give the complete definition; therefore, such
definition was erroneous. Further, the indictment
included the absent clause, and the charging paragraph,
paragraph 5, did not. Again, the failure to track the
indictment led to an incomplete charge which we view as
being an erroneous charge. Therefore, because we find
that the jury requested an addition to the charge and
because the charge was erroneous as given, the trial
court did not err when it elected to give the
additional charge.

Adm. R., Op. 9-11, ECF No. 9-3 (footnote and citations omitted).

It appears the trial court followed Texas law in

24

supplementing the charge.  In any event, the issue raises a

matter of state law.  Absent a federal constitutional violation,

a state court's interpretation of state law binds a federal court

sitting in habeas corpus.  *Bradshaw v. Richey,* 546 U.S. 74, 76

(2005).

For the reasons discussed herein,

The court ORDERS that the petition of petitioner for a writ

of habeas corpus pursuant to 28 U.S.C. § 2254 be, and is hereby,

denied.  For the reasons discussed herein, the court further

ORDERS that a certificate of appealability be, and is hereby,

denied.

SIGNED January ___8___, 2016.

JOHN MCBRYDE
UNITED STATES DISTRICT JUDGE